The next case on is University Bank v. Lansuppe Feeder, LLC. We'll wait a moment. Have a seat, Mr. Lee. We'll wait just a moment. Good morning, Your Honors. I'm Rob Beek, the New Orleans Office of Jones-Walker, LLP, representing the interveners below and the appellants here. Your Honor, in granting the motion for summary judgment, the District Court enforced a contract that is illegal. I have a question for you. Sure. You're arguing that there's an implied cause of action under Section 47b-2, is that correct? We're arguing that there is a cause of action under 47b-2. It's an express cause of action. Yes. Yes. Expressly created. 47b-2. Creates a cause of action for rescission. Correct. By any party. In any party. I agree with you that that, you can't read that as SEC. Okay. In any party has a cause of action for rescission in what circumstances? In the circumstance of a contract that is illegal under the Investment Company Act. And here— No, no, no. I would like you to go to the language of the statute. In what circumstances do you have an express cause of action under 47b-2 for rescission? The language of 47b-2 is that a court shall not deny rescission. Yes. But there's language before that. It's that language. There's 47b-1. To the extent that a contract described in paragraph 1, 47b-1, has been performed. Correct. Okay. The court shall not deny rescission. Unless— The equities— —favor enforcement, and enforcement is not inconsistent with the purposes of the ICA. Am I correct that the indenture, like most indentures, has a provision in it that says that if you end up selling some of these notes to somebody who's not qualified to buy them— Yes. —the sale will be undone? Yes. So how could it possibly be equitable to allow you, who had nothing to do with that transaction, to rescind the contract? One thing, that provision in the indenture gets crosswise with 47a, which, as with all of the other securities acts, prohibits any kind of provisions that work a waiver of the act. That's number one. Number two— It's not a waiver of the act. The idea is, since the indenture itself provides for a remedy to solve the violation of the act that you complain of, which, by the way, doesn't affect you, because you weren't the remedy. How can it be equitable for you to walk in and get the whole thing rescinded? Because once you have a violation of the registration provisions under 7a.4 of the act, the investment company cannot do any business that involves interstate commerce. Given the breadth of interstate commerce, anything, including the rescission, is going to be doing business in violation of 7. When the parties drafted the indenture, they said, oh, my God, that's such an extraordinary remedy. So let's put a provision in the indenture that says, if we happen to sell to a disqualified person, the sale will be undone. Automatically. It's going to be undone. We really don't want to sell to disqualified people. So if we happen to sell to a disqualified person, the sale is null and void. So okay, the remedy is there. Why does that not negate any contention that it would be equitable to allow you, an unaffected party, to rescind the contract? Several reasons. First off, although the trustee, Wells Fargo, did attempt to undo one of the sales, there are six sales. Three of the sales went to parties that are interveners in the court below and are before this court right now. So they didn't use the language. They didn't accomplish anything with the language. They didn't use it. And the language is, in essence, a waiver of the 47B2 remedy. Doesn't this allow any party, using your interpretation or the way you would like this interpreted, essentially to bring a case any time for rescission? I believe it does, given the use of the word equity in 47B1, well, in 47B2, and it certainly allows us to raise it at any time, 1% to the U.S. Supreme Court jurisprudence and other inferior courts. What U.S. Supreme Court jurisprudence? Kaiser Steel. So there need not be a private remedy in order to raise the defense of illegality. And you're not contending that the contract itself is illegal. You're contending that the performance of the contract was illegal because indentures were sold, notes were sold to disqualified parties. That's a performance issue. That's not a drafting of the contract issue. The contract as drafted is not illegal. The contract as formed is illegal, just as if there had been fraud in the inducement. Right. Okay. It's not a drafting error. It's a performance error. Are you contending that the original sale of the junior notes was to disqualified persons or that original purchasers subsequently resold notes to disqualified persons? Both. Both things happened. There were notes purchased at issue in 2005, and there were notes purchased later in the secondary market in 2007. Why don't you have a statute problem? In the sense of Alexander v. Sandoval and Belikoff. Belikoff doesn't apply here because in Belikoff there was no remedy. Here there is a remedy, and as both the Belikoff court recognized and Justice Scalia in his discussion in Alexander v. Sandoval recognized, the absence of a remedy is dispositive when you're trying to imply a private right of action. That's pretty much the end of the— You're not trying to imply a private right of action. You're saying there's an express right of action. I'm saying there's an express right of action. And if you are correct that there is an express right of action, which is a very legitimate way of reading this statute, all this talk about implied rights of action is silly because there's an express right of action. Correct. That is our position. But if, in fact, one wishes to treat this as an implied right of action, looking to Section 8 of the Investment Company Act, you see that the registration provision is imposed for the protection—for the public interest and for the protection of investors. So there is a right there. This is a fundamental key to the securities laws. It exists under the 33 Act for the registration for a public sale of securities. It exists under the 34 Act for the registration of brokers, under the Public Utilities Holding Company Act for public utility holding companies, and for advisers under the Advisers Act and here under the Company Act. And I'm out of time. So let me ask you something further before you sit down. I'm trying—I want to be sure that I understand correctly your reply brief. Looking at the red brief on page 26, the appellees' brief, they say on page 26 that the complaint fails to state a claim, and they say the indenture expressly prohibits the sale of notes to nonqualified purchasers, requires investments to represent that they are qualified purchasers, and empowers co-issuers to force any nonqualified issuers to sell the notes. Accordingly, appellants have no cause of action for rescission under 47B. Now, where in—do you answer that in the gray brief? What part of the gray brief addresses that argument? The reply brief. I'm not sure that we did address it. I don't remember, and I'm reluctant to take up the Court's time looking at our reply brief. We spent most of our efforts in the reply brief on the defense of illegality. So you didn't answer it? I beg your pardon? So you did not respond to this contention— I can't find it. —Contention 3, Roman numeral 3, on page 26 of the red brief, is not responded to in the reply brief? Your Honor, at this time, I can't tell you whether we did or not. You can take a look while your adversary is arguing. Mr. Corkill? Good morning, Your Honors. May it please the Court, Andrew Corkill of Quinn Emanuel, Urquhart & Sullivan, for the appellee, Lance Upfeeder, both in the District Court and here on appeal. I was thinking the podium may come up. Maybe it's at its max right now. It's up? Is that okay, Your Honors?  That's fine, Mr. Corkill. Thank you very much. I'll start with the question that Judge LaValle left off with, which is the alternative grounds for affirmance that we mentioned in our opposition brief. It's simply that the appellants actually don't state a claim under section 47b.1 for the reasons, Judge McMahon, that you were alluding to, that there is a predicate requirement if you're seeking rescission under section 47b.2, that you have a contract that's either made in violation of the Act or whose performance would involve a violation of the Act. That's in section 47b.1. And we'd submit that there's no such violation that's been identified here by the appellants, which could in— No violation was selling notes to disqualified purchasers. I thought that was the violation. I think that may be the violation that they're seeking to rely upon. If I were where I usually am, I'd get a readback of your last statement. Your opponent's position is that the contract was performed in violation of the Act because illegal sales were made, notwithstanding the provision in the contract that says we won't allow any illegal sales. I think that's a correct reading, Your Honor. And our position is that where you have a contract that explicitly precludes the sale of notes to non-qualified purchasers and actually provides, Judge McMahon, as you mentioned, a remedy to deal with that situation, which is the forced or required sale from a non-qualified purchaser to a qualified purchaser, that it goes too far to try and suggest that the performance of the contract in that instance is violative of the Act. But at a minimum, if we assume that your opponent is correct and the performance of the contract was violative of the Act, I take it it would be your fallback position that a weighing of the equities would preclude them from bringing a lawsuit for rescission where the contract itself contains a remedy for the very violation about which they complain. Yes, Judge McMahon, that's correct. Our fallback position is, frankly, that the Court need not reach either the question of an implied private right of action or an affirmative remedy here because the District Court's decision can be affirmed on the equities. Now, in the brief... Something else. Certainly, Judge McMahon. Did the... Did the... Your adversary, did the junior note holders show evidence on the summary judgment motion that the original sale of junior notes to... included sales to unqualified purchasers? There were affidavits put forth by representatives of some of the junior note holders, Judge LaValle, in which they represented that they were non-qualified purchasers at the time they initially purchased the notes. Now, the position... In the original sale? In the original... Well, I wanted to add one caveat there. Yes, in the original sale, but not the sale from the issuer to the non-qualified purchases, rather the sale from what's called... The intermediary? Yes, the intermediary, which was Bear Stearns and SunTrust in this instance. Which was an underwriter? Technically, I think in the parlance of the CDO, Judge LaValle, it's referred to as an initial purchaser, which is distinct from the underwriter, but for the sale purposes, I think it's fair to say that they played a role that was consistent with what you would think of as an underwriter role. And so, just returning quickly to the equities point, because I do, again, think that this is one way to avoid needing to reach either the implied private right of action or... What about implied private right of action? Doesn't this statute create a cause of action? Do you know of any way to get a district court to order rescission other than to bring a lawsuit? Can you send an invitation? You're correct, Judge McMahon, but the fact that it clarifies that the remedy of rescission is available to the extent a party otherwise has a private right of action doesn't mean that it in and of itself confers an expressed private right of action. And I'd suggest, Your Honours, that you can look at Section 36B of the Investment Company Act, which makes very clear the way Congress would write in an expressed private right of action. Section 36B says, an action may be brought under this subsection by the Commission or by a holder of such registered investment company on behalf of such company. So that's the type of language that's consistent with... That certainly is one way to do it. OK, but are you telling me that 47B does not confer a right of action for rescission on any party who can allege that there is a contract under Section 47B1 that has been performed? Yes, Judge Mann, respectfully, that is what I'm submitting. I'm submitting that 47B should be read as a clarification that that remedy may not be denied to a party who otherwise has a right of action, for example, under Section 36B, not that it confers an independent expressed private right of action. So first they have to have a right of action, then they get a right of rescission, making it clear that then they get a right of rescission. Correct, Judge Hall, subject obviously to the equities limitations that are built into Section 47B, yes. And I'd note that the Third Circuit and the Fourth Circuit have looked at this question as well. The Third Circuit in Santa Mena, the Fourth Circuit in Steinberg, and they both concluded that there was not a private right of action in Section 47B. I'll just address, well, let me ask, are there any other issues that you'd like me to address at this time, Your Honours? Otherwise, I'm happy to cede my time back. We're good at letting you know if we have them. Thank you very much. Mr. Beek? Yes. Could you just, for a moment, focus on this last point that Mr. Corkill suggested to us, that first you have to have a recognized right of action, and then the statute that you argue where you use the word, where the statute, not you, excuse me, uses the word any person, any party, I mean. It makes it clear that in the circumstance where the party does have a right of action, then the party has rescission as a remedy subject to the equities counter. If I can come in, this was a slightly indirect place. Please. All of the cases heretofore have discussed the breach of fiduciary duty provisions under the Act, whether it was under Section 26 with respect to hybrid products like variable annuities or the more standard mutual fund 12B1 problems under Section 36A and 36B. Those are contracts that are not key to the structure of the mutual fund. They don't go to the existence and the validity of the existence of the mutual fund. They're on the side. And the remedies that are provided under 36A to the SEC for enforcement and the derivative remedy under 36B are very narrowly focused on these breaches of fiduciary duty, alleged breaches of fiduciary duty in connection with 12B1 charges. That's not susceptible to rescission. It could be disgorged. It could be undone in one way or the other. But it doesn't strike at the heart of the existence of the mutual fund, as do the provisions in an indenture, which is the organic document that governs the rights of the constituents of the investment company, just as articles of incorporation do. Here, this was void from the get-go because of the failure to register. And indeed, our summary judgment opposition proofs that were attached to our response to Lansup's statement of material uncontested facts did have affidavits from the purchasers that did document when they purchased and that they were not qualified purchasers. And we did plead in our complaint the violation of the registration provision and requested the remedy under 47B. I don't think that we had any need to address the no cause of action argument raised in the opposition brief. But, in fact, we did refer to it obliquely in note 2 on page 5 of our reply. But we pleaded the cause of action. What does note 2 on page 5 of the reply say? It adds a little bit more color in that none of the opposition proofs also stated that none of the non-QPs, in fact, very few of the purchasers, if any, received the offering statement, the indenture, or even the qualifying affidavits or placement contracts that you typically sign where you acknowledge, you know, I'm a qualified purchaser, or in the case of Reg D, I'm an accredited investor, or in the case of Rule 144A, I'm a qualified institutional buyer. They never got this stuff. Thank you. Thank you very much. Thank you both. We'll reserve decision in this case.